Samuel Goodman, Wm. E. Goodman and Joseph E. Goodman, trading as Harrington & Goodman, Appellants, v. The Merchants' Despatch Transportation Company.

*Contract—Shipping receipt—Bill of lading.*

When a shipping receipt provides that: " The acceptance of this receipt for goods made subject to the provisions of the bill of lading of this company makes this an agreement between the M. D. T. Co. and carriers engaged in transporting said goods and all parties interested in the property," such provision in the receipt requires the shipping receipt and the bill of lading to be read together as constituting the agreement.

*Common carrier—Misdelivery of goods—Evidence—Question for jury.*

A suit was brought by plaintiff against a transportation company for alleged misdelivery of goods, consigned to R. of Tyler, Texas, by deliv-

ering same to M. at Dallas, Texas. *Held,* that the question was for the jury under the terms of the contract as entered into between the transportation company and the consignor, as evidenced by the shipping receipt and bill of lading, whether the company had shown a good excuse other than negligence, for not having delivered the goods to R. the consignee; whether it did all that a prudent, reasonable, commonsense business man would have done to insure a proper delivery to the proper person; and whether the transportation company had shown that it was not negligent.

*Common carrier—Negligence in delivery of goods—Question for jury.*

In a question of negligence arising from alleged misdelivery of goods by a transportation company, *held,* that the jury may take into consideration the conduct of consignor toward the person to whom the goods were delivered after receipt by him and any delay which may have occurred in notifying the transportation company of such alleged misdelivery and the relation of the recipient of the goods toward the consignee.

Argued Oct. 7, 1897. Appeal, No. 67, Oct. T., 1897, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., March T., 1895, No. 1052, on verdict for defendant. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Assumpsit for the recovery of the value of certain goods amounting to $430.69 alleged to have been misdelivered by defendant company. Before AUDENREID, J.

The facts sufficiently appear in the charge of the court below, which is as follows :

As I understand the undisputed facts in this case, they are briefly these : On the 18th of February, 1890, the firm of Harrington & Goodman in this city packed up and shipped to a man named W. B. Robinson, at Tyler, Texas, a case of dry goods, of the value of $430.69. These goods were forwarded to Robinson by the hands of the Merchants' Despatch Transportation Company, to which they were delivered on the date before mentioned. That company gave to the shippers, Harrington & Goodman, a shipping receipt, in which the package containing the goods is described and specified by reference to the marks upon it, W. B. Robinson, Tyler, Texas, via St. Louis. [The goods seemed to have reached St. Louis in good order, and to have been passed on from that point to Tyler, Texas, by the Pacific Express Company. On their arrival

at Tyler a party named A. J. Michell, who for a long time prior to that date had been conducting business at Tyler as a sort of general agent for the consignee named in the receipt, went to the agent of the express company, and directed the reshipment of the goods to Dallas, Texas, to the firm of Michell & Co. The Pacific Express Company forwarded the goods to Dallas per his request.] [9] They were received by Michell & Co., who have since failed to pay for them, except to the extent of $50.00. [It does not seem to be disputed that A. J. Michell had been W. B. Robinson's agent at Tyler, an agent charged with various general and extensive powers. It appears from his own testimony that he was in the habit of receiving all goods consigned by express or freight to Robinson, of keeping a bank account in Robinson's name and of honoring drafts drawn on Robinson at that point. His powers, as you see, were very, very extensive. He was practically, as I recall the testimony which was read from his deposition, Robinson's alter ego at that point, with authority to do pretty much all that Robinson could himself if he were there.] [10] The firm of Harrington & Goodman failing to collect from Robinson or from Michell & Co. the full value of the goods embraced in this shipment, have sued the Merchants' Despatch Transportation Company for the value of the consignment, charging it as carrier with the value of the goods committed to it, but which it has since failed to deliver or to return to the consignors. The defense, I take it, is of the following character: It is asserted, in the first place, on behalf of the defendant, that it is not a common carrier of goods, but that its position is that of a forwarder. It claims to be a corporation which receives and forwards goods, taking upon itself the expense of transportation, for which it receives a compensation from the owners of the goods, but it has no concern in the vessels or wagons or cars by which the goods are transported, and no interest in the freight as freight. [It claims, therefore, that it not to be regarded as a common carrier, but as a mere bailee for hire. It stands on the doctrine of law that a bailee for hire, of the character of forwarder, is not bound, as is a common carrier, to deliver the goods committed to its care for transportation safely, at all events, except in a case where such safe delivery has been made impossible by the act of God or of the public enemy, but is bound only to perform its duty of

transportation with care and fidelity, and show that any loss of the goods which may have arisen, has arisen not through its default or through the default of its servants.. On that proposition of law the defendant claims to be excused from any liability to the plaintiffs in this case, because, it is said, it has used due care and diligence in the handling and delivery of the plaintiffs' goods.] [11]

Another point of its defense is that it has complied with the contract made between it and the firm of Harrington & Goodman, in this, that since the intention of the firm of Harrington & Goodman was that the goods should be delivered to A. J. Michell, although the consignment was made to Robinson, Michell was the real party to whom it was intended the goods should be delivered, and that as he did get the goods, it is discharged. Failing that, it stands upon the point that Michell was Robinson's agent to receive these goods, and that the course of Robinson's dealings through Michell at Tyler, had been such as to justify it and its agents (not only as to Robinson, but as to all parties dealing with Robinson through them) in the belief that Michell had the authority to receive the goods, or to cause them to be forwarded to some other party at some other point. That I understand to be the defense outlined by the counsel for the Merchants' Despatch Transportation Company. [Besides this, it claims, and I think the claim is one to which you must pay great attention, that Harrington & Goodman have ratified the delivery of these goods to Michell & Co. by accepting a payment on account of their price from Michell, and by failing to complain of that misdelivery until nearly twenty months had elapsed after the date of the consignment of the goods.] [12]

[It is my opinion, and I charge you as matter of law, that under the terms of the contract entered into between the consignors and the transportation company, as evidenced by the shipping receipt and the bill of lading, it was the duty of the transportation company to deliver that case of dry goods to Mr. Robinson at Tyler, Texas, or show a good excuse for not having done so, that excuse being something other than negligence on their part or on the part of their employees or agents in the delivery of the goods. It lies on the transportation company to show that it was not negligent, and that under the circumstances

of the case, its employees did all that prudent, reasonable, commonsense business men would have done to insure a proper delivery to the proper person of the goods which it received from these plaintiffs. It is for you to determine whether they have done that, whether they have performed their full duty in delivering these goods.] [13]

[If you believe that the goods in question were delivered to a person especially authorized by the consignee or by the consignee's general course of dealing with him, to receive these goods, and that the reshipment of the goods to Dallas, Texas, was within the powers of Michell, as evidenced by the course of dealing, to which he has testified, between himself and Robinson, then you must find a verdict for the defendant.] [14]

[In determining whether or not these parties were negligent, you have a right to take into consideration the fact that Harrington & Goodman, after the delivery of these goods, corresponded with Michell & Co., and received money from them, and treated them just as if they had been the parties to whom the consignment had originally been made.] [15]

[If, on the other hand, you are of the opinion that the Merchants' Despatch Transportation Company was negligent in making the delivery in Tyler, Texas, and in reshipping the goods to the new consignees named by Michell, viz., Michell & Co., at Dallas, Texas, if you believe that there was nothing in the course of dealings between Robinson and the express agents at Tyler to warrant the belief that Michell had authority to give the order for the reshipment which he then gave, your verdict must be for the plaintiff,] [16] and the verdict in their favor must be for the amount of the bill of goods, $430.60, with interest from April, 1890, less the $50.00 which have since been paid by Michell & Co., and which counsel for the plaintiffs have agreed shall be credited upon this claim.

I have been requested by the plaintiffs' counsel to charge you as follows :

1. Under the receipt offered in evidence, the defendant is responsible, as a common carrier, for the through carriage of the case of dry goods from Philadelphia to Tyler, Texas. *Answer :* That point I refuse. [17]

2. Under the bill of lading offered in evidence, the defendant is responsible, as a common carrier, for the through car-

riage of the case of dry goods from Philadelphia to Tyler, Texas. *Answer:* That point I refuse. [18]

3. If the jury believe, under the evidence, that the defendant agreed to carry said case of dry goods from Philadelphia to Tyler, Texas, the defendant is responsible for the through carriage of said goods and the delivery thereof to W. B. Robinson. *Answer:* That point I affirm.

4. The defendant had no right, without plaintiffs' authority, to deliver to any other person than W. B. Robinson. *Answer:* That point I affirm, with this qualification: It was their right to deliver the goods either to W. B. Robinson, or W. B. Robinson's duly authorized agent, and, if you find that Michell was Robinson's duly authorized agent to receive the goods or to order their reconsignment and reshipment to another point, your verdict must be for the defendant. [19]

5. The misdelivery of the case of dry goods, or the delivery to the wrong person, is not a "loss, detriment or damage," within the meaning of the words in the following provision of the receipt, to wit: "It is further stipulated and agreed that in case of any loss, detriment or damage, done to or sustained by any of the property herein receipted for, during such transportation, whereby any liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening thereof," and said provision in the receipt is no answer to plaintiff's claim in this case. *Answer:* That point I affirm.

6. The misdelivery of the said case of dry goods, or the delivery to persons not entitled to receive it, is not a "loss" or "damage" within the meaning of the words in the third condition of the bill of lading, to wit: "No carriers shall be liable for loss or damage not incurred on its own road. . . . Claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event." And said condition is no answer to plaintiff's claim in this case. *Answer:* That point I affirm.

7. The third condition of the bill of lading which provided that "Claims for loss or damage must be made in writing to the agent at point of delivery promptly after the arrival of the prop-

erty, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event," is binding, if at all, upon the consignee only and not upon the shipper. *Answer :* That point I affirm.

8. The third condition of the bill of lading quoted in the seventh point, if it does apply to the shipper, is an unreasonable condition. *Answer :* That point I affirm.

9. The defendant must deliver the bill of lading at or near about the time the goods were received for transportation in order to claim the benefit of the provisions of the third condition in the bill of lading. *Answer :* That point I refuse. It was the right of the plaintiffs in this case to ask for a bill of lading, and if they did not do it, it was their own fault. [20]

10. As the goods shipped to W. B. Robinson, February, 1890, were delivered to Michell in April, 1890, and no bill of lading or copy thereof was delivered or handed to plaintiffs until September, 1891, the defendant cannot claim the benefit of the provisions of the third condition of the bill of lading. *Answer :* That point I affirm.

11. If the defendant relies upon the third condition of the bill of lading, quoted in the seventh point, it thereby affirms that the bill of lading is the contract between the parties to this suit. *Answer :* That point I affirm.

12. The acceptance of any payment on account by the plaintiffs, from the person or persons, to whom the goods were wrongfully delivered, is no bar to this suit against the carrying company, but the amount so received goes in reduction of damages. *Answer :* That point I affirm. Although I will add this qualification, that it seems to me that the receipt of money on account of the price of these goods from the parties in whose hands the goods came after their reconsignment from Tyler, Texas, is evidence to show a ratification and approval of the delivery which was made by the defendant to Michell & Co. [21]

13. Under all the evidence in this case, the verdict must be for the plaintiffs. *Answer:* That point I refuse. [22]

I have been requested by the defendant to charge you as follows :

1. The defendant's contract in respect of the goods in question required it only to carry said goods promptly and properly

to East St. Louis, and there promptly to deliver them in good order and condition to the next carrier on their route to destination, exercising reasonable care and prudence in the selection of the next succeeding carrier. If defendant has done this, it cannot be held responsible for damage to or loss of the said goods happening beyond East St. Louis, or for the failure on the part of the carrier or carriers beyond East St. Louis to fulfil their obligations in respect of the said goods. *Answer:* That point I refuse. I regard the duty of the defendant in this case to be that it should deliver the goods not to East St. Louis only, but to Tyler, Texas. That was the destination fixed by their contract.

2. Plaintiffs having accepted without question the benefits of what they claim to be an unauthorized delivery of the goods in question, knowing at the time that the goods were delivered to other than the consignee, are estopped from disputing the propriety of such delivery. *Answer :* That point I refuse. I do not regard their collection of the sum, which it is admitted they received from Michell & Co., to amount to an estoppel, but I regard the receipt of that money, and the attempt to collect more from Michell & Co. as extremely strong evidence that the delivery made, as has been described by the Merchants' Despatch Transportation Company, or their subagents at Tyler, was ratified and approved by the plaintiffs in this case. [23]

3. Plaintiffs having failed to notify the defendant until a year and a half after the delivery of the goods in question at the terminus to other than the consignee, and having known all that time that such delivery was made to other than the consignee, if defendant, owing to such failure to so notify, was misled to its injury to believe the said delivery was proper, plaintiffs are estopped from asserting that such delivery was erroneous. *Answer :* That point I will refuse, but I regard their failure for a year and a half after the delivery of the goods to a person other than the consignee named in the shipping receipt, to notify the transportation company of such misdelivery extremely strong evidence that the plaintiffs concurred in that delivery and ratified the act of the defendant in giving the goods to Michell & Co. [24]

4. Plaintiffs having recognized, as the party to whom the goods ought to have been delivered, the party who actually did

receive them, by writing him for payment and accepting from him part payment therefor, are estopped from claiming that said goods were delivered to the wrong party. *Answer:* That point I refuse. I do not regard such acts as an estoppel; but, as I have already said, in my opinion, that is very strong evidence of an acquiescence in the delivery which was made by this defendant to Michell & Co., and a ratification of what the transportation company did in fulfilling its contract, or an acceptance of the act of the defendant company as a complete fulfilment and discharge of their contract of transportation. [25]

5. By the terms of the contract of shipment as claimed by plaintiffs herein, it is provided that "claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, or after due time for the delivery thereof, no carrier hereunder shall be liable in any event;" and, as this provision is binding upon plaintiffs and they have failed to show a compliance therewith, they are not entitled to recover any damages for alleged loss of, or damages to, the goods in question. *Answer:* That point I refuse.

6. Under the provisions of the contract of shipment in question, the plaintiffs are not entitled to recover, and your verdict should be for the defendant. *Answer:* That point I refuse. I think I have charged you as fully as the case warrants, and I shall leave the matter in your hands. It is your duty to render a fair verdict. Let not the fact that the defendant is a corporation influence you in this matter. You are sworn to try the case on the law and the evidence. [If you believe that the defendant company performed its contract to transship these goods to Robinson, at Tyler, Texas, negligently, that a reshipment to Dallas, under a reconsignment to Michell & Co., was a thing, which, under the circumstances, no reasonable, sensible, ordinary, everyday, commonsense man would have done, then your verdict must be for the plaintiffs for the amount which they have claimed; but, if you believe that, the defendant company, or its agent, the Pacific Express Company, did just what any reasonable, commonsense, everyday business man would have done under the circumstances, and that they were not guilty of negligence, then your verdict must be for the defendant.] [26]  And so, if you believe that the plaintiffs have acqui-

esced in the delivery made and have accepted what the defendant did as a fulfilment and discharge of its contract.

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* among others, were (9–16) To portions of the judge's charge, reciting same. (17–25) In answers to the points, reciting said points and answers. (26) To a portion of the judge's charge, reciting same. (27) In presenting the case to the jury in the general charge and answers to points as set forth in the foregoing assignments of error in an inadequate, partial, unfair and misleading manner. (28) In not presenting to the jury a full, fair and impartial view of the plaintiffs' case under the evidence and the law.

*Wm. H. Burnett*, with him *Sheldon Potter* and *John Sparhawk, Jr.*, for appellants.—The court erred in refusing plaintiffs' thirteenth point, which was as follows : "Under all the evidence in this case the verdict must be for the plaintiffs."

The bill of lading is the contract between the parties : Clyde v. Hubbard, 88 Pa. 358.

The defendant company falls within the class of companies which have been decided to be common carriers : Bank v. Express Co., 93 U. S. 174 ; Buckland v. Express Co., 97 Mass. 124 ; 2 Am. & Eng. Ency. of Law, 783, and notes.

The shipping receipt was delivered up to the defendant and accepted by it when the bill of lading was issued. The mere lapse of time between the giving of the shipping receipt and the bill of lading was not important : Goodman v. Transportation Co., 3 Pa. Superior Ct. 282.

The word "forward" of itself is not sufficient to convert a contract of carriage into one to "forward" merely : Clyde v. Hubbard, 88 Pa. 358 ; Porter on Bills of Lading, Ch. 23, secs. 325, 333, 337 ; Buckland v. Express Co., 97 Mass. 124.

There is nothing in the contract itself which is any defense to plaintiffs' claim.

The claim in this case is for damages for a wrongful delivery.

Condition 3 of the bill of lading provides : "No carrier shall be liable for loss or damage," etc., and in this respect the bill of lading and the shipping receipt agree, except that the latter adds the word "detriment."

This condition affords no defense, because a wrongful delivery is not a "loss, damage or detriment:" Clyde v. Hubbard, 88 Pa. 358; Porter v. Ex. Co., 4 So. Car. (Richardson), 135.

This provision does not apply to the shipper but only to the consignee. As to the former, it would be entirely unreasonable.

There is no evidence that the consignor had any knowledge of the misdelivery until six months after it had occurred.

There was no evidence offered which would support any defense to the plaintiff's claim under the contract.

The contract was to deliver to W. B. Robinson at Tyler, Texas.

Proper delivery is as much a part of this contract as safe transportation: Pa. R. R. Co. v. Stern, 119 Pa. 24; Wernwag v. R. R. Co., 117 Pa. 46.

The defendant was bound to know whether Michell & Co. were the agents of Robinson, or had any authority to receive these goods: Wernwag v. Railroad Co., 117 Pa. 46.

There was no sufficient evidence of the ratification of defendants' wrongful delivery by the plaintiffs, to deprive plaintiffs of the right of action against defendants : 14 Am. and Eng. Ency. of Law, 826.

The acceptance of payment on account from the party who obtained possession by the wrongful delivery, is no ratification by the principal, and does not discharge the defendant from the consequences of his wrongful act: 2 Am. & Eng. Ency of Law, 903; Railroad Co. v. Pumphrey, 59 Md. 390; Forbes v. Railroad Co., 133 Mass. 154; Jellett v. R. R. Co, 30 Minn. 265, Rosenfield v. Express Co., 1 Woods, 131; 2 Sedgwick on Damages, sec. 853, p. 622.

The judge's instruction to the jury was throughout erroneous, because he charged the jury: That the question in the case was one of negligence.

Even if the judge was right in leaving the case to the jury, his charge was unfair and partial, upon the subject of ratification, and did not fairly present the plaintiffs' case.

This part of the charge is particularly set forth in assignments 12, 15, 23, 24 and 25. And the error consists in presenting to the jury one view only of the evidence, and that the view

which defendants relied upon to prove ratification and in neglecting entirely to present the plaintiffs' view; and in throwing the weight of the judicial opinion entirely in favor of defendant. This is error : Larzelere v. Tiel, 3 Pa. Superior Ct. 109 ; Minick v. Gring, 1 Pa. Superior Ct. 484.

The judge referred to the acceptance of payment on account as evidence only of ratification, and strongly intimated to the jury that, in his opinion, that was all it was.

He did not notice the plaintiffs' position that they had a right to accept money for their goods from any person who wrongfully came into possession of them, and they were not bound to rely for payment in full from a person who might be without responsibility, and who resided several hundred miles away.

Nor did he call attention to the fact that the carrier had never notified plaintiffs of the delivery; nor that the carrier had received all he was entitled to receive by having the amount paid on account deducted from the damages he would otherwise have been obliged to pay.

*Chas. Heebner*, with him *J. Claude Bedford*, for appellee.— It is submitted that the appellants have no just ground for complaint as to the trial of this cause in the court below. What the Superior Court (see 3 Pa. Superior Ct. 282) indicated as errors in the former trial were remedied in this latest trial; the so-called bill of lading was admitted in evidence, and the facts in the case were submitted to the jury and submitted fairly for the plaintiffs.

It is admitted that these goods were carried "safely, promptly, and properly " to destination, and there was no attempt to show that defendant had a " line " or " route " extending to destination, Tyler, Tex., and, in point of fact, it did not have such " line " or " route." The defendant is distinctly a forwarding company, holding itself out as such, and known as such, not having any road or owning or controlling any motive power, but having special facilities for accomplishing the expeditious movement of freight. The engagement in this receipt is by express words to forward. The word " forward " has a distinct, well-recognized meaning in contracts for the transportation of goods, and all the terms of this shipping receipt show plainly that

the word "forward" in it was used there in its well-known and legal sense. See Mullarkey v. R. R. Co., 9 Phila. 114, and Express Co. v. Bank, 69 Pa. 394. See also plaintiff's argument in report of the former hearing, 3 Pa. Superior Ct. 384.

OPINION BY BEAVER, J., December 13, 1897:

When this case was before us nearly a year ago, we sent it back, in order to allow the bill of lading furnished by the defendant to the plaintiffs to be received in evidence, and also that the facts relating to the delivery of the goods by the defendant to the consignee might be submitted to the jury. Both of our directions were observed in the trial of the cause. A verdict was found by the jury for the defendants, upon which judgment was entered and from which the plaintiffs appeal.

The record shows twenty-eight assignments of error, but the first eight of these were practically withdrawn at the argument as not having been made in accordance with our rules. The material questions in the case related to the delivery of the goods shipped by the plaintiffs to the consignee at the place of destination, and the effect of the receipt of a portion of the value of the goods by the plaintiffs from a person other than the consignee. The consideration of these questions involves others which are, for the most part, collateral and incidental. The main point in the case was the delivery to Michell, as the agent of the consignee, and the reshipment of the goods by his direction to a point other than the place of destination. The facts in regard to this delivery were in the main fairly submitted to the jury.

The plaintiffs make their principal argument on the twenty-second assignment of error which involves the refusal of the court to affirm the point that "under all the evidence in this case, the verdict must be for the plaintiffs." It is difficult to see how the court could have affirmed this point, in view of our directions in Goodman v. Transportation Company, 3 Pa. Superior Ct. 282, in which we say that "the facts should have been submitted to the jury," referring to the facts in relation to the delivery.

The only question in the case is as to the manner in which those facts were so submitted. All of the plaintiffs' points, except the first, second, ninth and thirteenth, were affirmed

absolutely or with proper qualifications. How the plaintiffs could consistently ask the court to say that "under the receipt offered in evidence, the defendant is responsible as a common carrier for the through carriage of the case of dry goods from Philadelphia to Tyler, Texas," we cannot understand, their whole contention being that the receipt was merged in the bill of lading, nor can we see how the court could have affirmed a like proposition in regard to the bill of lading, when the receipt itself provides that "the acceptance of this receipt for goods, made subject to the provisions of the bill of lading of this company, makes this an agreement between the Merchants' Despatch Transportation Company and carriers engaged in transporting said goods and all parties interested in the property."

The receipt and bill of lading, taken together, constituted the contract between the parties. No request was made of the court to determine as a matter of law whether the contract between the parties made the defendants common carriers or merely forwarders, and indeed, under the facts of the case, the question was of little practical importance. There is no denial of the fact that the goods were safely transported and delivered at Tyler, Texas. The real question, as we have already intimated, was, were they properly delivered? The trial judge in the court below, however, evidently treated the contract of the defendant as that of a common carrier, and charged the jury that "it was the duty of the transportation company to deliver that case of dry goods to Mr. Robinson at Tyler, Texas, or show a good excuse for not having done so, that excuse being something other than negligence on their part or on the part of their employees or agents in the delivery of the goods." The court below did not impose any duty upon the plaintiffs of showing negligence on the part of the defendant; but, on the other hand, made it incumbent upon the defendant to show that it was not negligent.

Taking the charge as a whole, in connection with the answers to the points of both plaintiffs and defendant, we can see no substantial error. The plaintiffs' side of the case was presented to the jury quite as favorably for them as they had a right to ask or expect.

The judgment is affirmed.